UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HEARST COMMUNICATIONS, INC., et al.,

                    Plaintiffs,   :   25-CV-01615 (JAV)

       -v-   :   OPINION AND ORDER

RUGS AMERICA CORP., et al.,

                    Defendants.
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

       Plaintiffs Hearst Communications, Inc. ("HCI") and Hearst Magazine Media, Inc. ("HMMI") (collectively, "Plaintiffs") bring this civil action against Rugs America Corp. ("Rugs Corp."), Rugs America Holdings LLC ("Rugs Holdings"), and Aaron Hakimian (collectively, "Defendants"). Plaintiffs assert causes of action against Defendants for trademark infringement in violation of 15 U.S.C. § 1114(1); unfair competition in violation of 15 U.S.C. § 1125(a); common law unfair competition; and breach of contract. ECF No. 1 ("Compl."), ¶¶ 54-70. Defendant Rugs Holdings now moves to dismiss the breach of contract claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion to dismiss is DENIED.

## BACKGROUND

       For purposes of this motion to dismiss, the Court accepts as true the following factual allegations set forth in the Complaint. Beginning in 1886, Defendants' predecessors-in-interest began using the *Cosmopolitan* trademark in

connection with a magazine. Compl., ¶ 13.  Today, *Cosmopolitan* is a well-known young women's media brand, with engagement across print, digital, video, and social media, as well as retail-store shelves. *Id.* The *Cosmopolitan* mark has been registered in the United States Patent and Trademark Office for magazines since 1956. *Id.*, ¶ 15. Since 2019, HCI is the registered owner of the COSMOPOLITAN mark for products including carpets, rugs, area rugs, bath mats, floor coverings, and pet feeding mats. *Id.*, ¶ 17. HCI has also registered the COSMOPOLITAN BY COSMPOLITAN mark for those same products. *Id.*, ¶ 18. In 2019, HCI licensed these marks to HMMI, including the right to further sublicense. *Id.*, ¶ 20.

Plaintiffs license their trademarks for a variety of products and services. *Id.*, ¶ 16. In April 2018, HCI and Rugs Corp. executed a license agreement (the "License Agreement"), which provided that HCI would license the COSMPOLITAN and COSMOPOLITAN BY COSMOPOLITAN (together, the "COSMO marks") to Rugs Corp. *Id.*, ¶ 22. The License Agreement was executed by Aaron Hakimian, on behalf of Rugs Corp. *Id.*, ¶ 24.

The License Agreement grants Rugs Corp. a non-exclusive, non-transferable right to use the COSMO marks for area rugs, scatter rugs, and welcome mats. *Id.*, ¶ 22. In exchange, Rugs Corp. was to pay royalties to Defendants, with a guaranteed minimum annual royalty specified in the contract. *Id.* The term of the License Agreement was three years, extendable for an additional two years. The License Agreement provides that any assignment of the license would be null and void and have no further effect. *Id.* HCI could terminate the License Agreement if

2

Rugs Corp. materially breached the agreement and did not remedy the breach within ten days of written notice. *Id.*, ¶ 23.

In 2019, HCI assigned the License Agreement to HMMI. *Id.*, ¶ 25. On February 27, 2020, HMMI and Rugs Corp. executed an amendment to the License Agreement (the "First Amendment"). *Id.*, ¶ 26. The First Amendment did not materially amend any of the terms. *Id.*, ¶ 27.

On February 22, 2022, a second amendment to the License Agreement was executed (the "Second Amendment"). *Id.*, ¶ 28. The Second Amendment was also executed by Hakimian, but this time not on behalf of Rugs Corp., but on behalf of Rugs Holding, "formerly known as Rugs America Corporation." *Id.* The Second Amendment extended the term of the License Agreement through December 31, 2024. *Id.*, ¶ 29.

Between 2022 and March 2024, Defendants defaulted on the royalty payments due under the Licensing Agreement. *Id.*, ¶ 30. A default notice was sent on March 12, 2024, stating that the overdue payments constituted a breach of the Licensing Agreement. *Id.*, ¶ 31. On April 11, 2024, HMMI sent a termination notice to Defendants, and again demanded payment of the delinquent royalty payments. *Id.*, ¶ 33. Defendants have not paid the outstanding amounts due. *Id.*, ¶ 34.

Notwithstanding the termination of its rights to use the COSMO marks, Defendants both continued to use the marks to identify and promote its rugs, including on its website, in online marketplaces, in its showrooms, and at trade

shows. *Id.*, ¶¶ 36-44.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, that the plaintiff is entitled to relief. *Id.* at 679.

In deciding a Rule 12(b)(6) motion to dismiss a complaint, the Court "should assume [the] veracity" of the allegations and then "determine whether they plausibly give rise to an entitlement to relief." *Id.* While a plaintiff is not required to assert detailed factual allegations to survive a motion to dismiss, the complaint demands more than "an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Determining whether a complaint states a plausible claim . . . will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

When evaluating a Rule 12(b)(6) motion, courts may consider documents that are attached to, integral to, or incorporated by the pleadings. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (holding that contracts referenced

in complaint could be considered on motion to dismiss). In a breach of contract claim, a court may consider the underlying contract, even if it is not formally incorporated by reference in the complaint. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196-97 (2d Cir. 2005).

## DISCUSSION

As Defendants acknowledge, their argument on this motion to dismiss "is simple." ECF No. 31 ("Def. Br.") at 4. Defendants contend that the breach of contract claim against Rugs Corp. should be dismissed because Rugs Corp. is not a signatory to the Second Amendment. *Id.* As the failure to pay royalties is only alleged to have occurred during the time period covered by the Second Amendment, there would thus be no cognizable claim against Rugs Corp. for breach of contract.

Defendants are correct that a "non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 469 (S.D.N.Y. 2016) (citation omitted). Yet Defendants' argument assumes that the contract at issue is the Second Amendment. That is not what is plead in the Complaint, however. Rather, the Complaint alleges that the License Agreement, executed by Rugs Corp. in 2018, and as amended by the First Amendment and the Second Amendment, is the contract that has been breached. Compl., ¶¶ 66-70. And Rugs Corp. is alleged to be a party to that contract. *Id.*, ¶ 22. Accordingly, for purposes of this motion to dismiss, the Complaint plausibly alleges sufficient facts

to support a breach of contract claim against Rugs Corp.

Rugs Corp.'s argument that it "does not seek dismissal from claims arising under the License Agreement or First Amendment in this motion," but only breach of contract claims "premised on the Second Amendment," ECF No. 35 ("Reply Br.") at 3, is inapposite. Drawing all reasonable inferences in favor of the Plaintiffs, as the Court must on this motion to dismiss, the Complaint sufficiently alleges that there was a single contract, the License Agreement, that was twice amended. The amendments to the contract are not alleged to be separate contracts.

Defendants point to the language of the preamble of the Second Amendment to suggest that the Second Amendment served to form a new contract, with new parties. Def. Br. at 5-6. The preamble to the Second Amendment reads:

> This Second Amendment to the Agreement (the "Second Amendment") is effective as of the date this Second Amendment is executed by both parties (the "Effective Date") by and between Hearst Magazine Media, Inc. (f/k/a Hearst Magazines, a division of Hearst Communications, Inc.), . . . (the "Licensor") and Rugs America Holdings, LLC, formerly known as Rugs America Corporation . . . (the "Licensee"). . . . WHEREAS, Licensor and Licensee entered into an Agreement commencing as of March 1, 2018, as amended (the "Agreement"), whereby the Licensor licensed to the Licensee the right to use the COSMOPOLITAN trademark for the purposes of manufacturing, promoting and selling the Licensed Products, subject to the terms and conditions set forth therein; WHEREAS, the Parties desire to amend the Agreement, as reflected herein; . . . The Agreement shall be amended as follows."

ECF No. 31-3.

Far from suggesting that the Second Amendment constituted a new contract

between new parties, the Second Amendment states that the parties entered into an Agreement in 2018, i.e., the License Agreement. The Second Amendment then explicitly provides that it is amending the License Agreement. The Second Amendment then went on to list the specific paragraphs in the comprehensive, 32-page Licensing Agreement that were to be amended.

Defendant notes that neither of the signatories to the Second Amendment were the original parties to the License Agreement, suggesting that there had been a substitution of parties for both sides. Def. Br. at 5-6. Defendants are correct that the signatories to the Second Amendment are both listed as "formerly known as" the original signing parties. The preamble also refers to both signatories to the Second Amendment as the entities that "entered into an Agreement as of March 1, 2018." ECF No. 31-3. At best, then, the language of the agreement is ambiguous on this point. Dismissal is therefore not appropriate at this stage of the litigation. *Eternity Glob. Master Fund v. Morgan Guar. Trust Co.*, 375 F.3d 168, 178 (2d Cir. 2004) ("[A] claim predicated on a materially ambiguous contract term is not dismissible on the pleadings.").

## CONCLUSION

For the reasons stated herein, the motion to dismiss is DENIED. The Clerk of Court is directed to terminate ECF No. 29.

SO ORDERED.

Dated: August 15, 2025  
      New York, New York

_____  
JEANNETTE A. VARGAS  
United States District Judge